UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LEON ALSPAW,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:21-cv-02218 AC<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment is DENIED, and defendant's cross-motion for summary judgment is GRANTED.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on May 26, 2017. Administrative Record ("AR") 188-90.[2] The disability onset date was alleged to be May 9, 2016. AR 188. The application was disapproved

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF No. 8.

initially and on reconsideration. AR 120-124, 127-133. On August 8, 2019, ALJ Christopher Knowdell presided over the hearing on plaintiff's challenge to the disapprovals. AR 48-85 (transcript). Plaintiff, who appeared with her counsel Jeffrey Milam, was present at the hearing. AR 48. June Hagan, a Vocational Expert ("VE"), also testified at the hearing. Id.

On August 13, 2019, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 25-43 (decision), 44-47 (exhibit list). On June 10, 2020, after receiving a request for review and a Representative Brief dated September 9, 2019 as additional exhibits, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 11-14 (decision and additional exhibit list).

Plaintiff filed this action on December 1, 2021, after receiving two extensions of time from the Commissioner. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 12. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 15 (plaintiff's summary judgment motion), 16 (Commissioner's summary judgment motion). Plaintiff did not file a reply brief.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1961, and accordingly was, at age 55, a person of advanced age under the regulations, at the time of the ALJ decision.[3] AR 188. Plaintiff has at least a high school education, and can communicate in English. AR 467. Plaintiff has prior work experience as a cook. AR 96.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[3] See 20 C.F.R. § 404.1563(e) ("person of advanced age").

2

1    Substantial evidence is "more than a mere scintilla," but "may be less than a
2    preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such
3    evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.
4    Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the
5    record can constitute substantial evidence, only those 'reasonably drawn from the record' will
6    suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).
7    Although this court cannot substitute its discretion for that of the Commissioner, the court
8    nonetheless must review the record as a whole, "weighing both the evidence that supports and the
9    evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,
10   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The
11   court must consider both evidence that supports and evidence that detracts from the ALJ's
12   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

13   "The ALJ is responsible for determining credibility, resolving conflicts in medical
14   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th
15   Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of
16   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,
17   278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the
18   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn
19   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.
20   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on
21   evidence that the ALJ did not discuss").

22   The court will not reverse the Commissioner's decision if it is based on harmless error,
23   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
24   ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
25   2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
26   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).
27   ////
28   ////

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since May 9, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: anxiety disorder/adjustment disorder with anxiety and depression/depressive disorders and/or schizophrenia spectrum disorder and/or somatization disorder (prominent hypochondriacal features), and/or avoidant personality disorder with self defeating and schizoid personality traits and dependent personality features, essential tremors, and diabetes (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except as follows. The claimant is limited frequent bilateral handling and fingering and must avoid concentrated exposure to hazards such as heights, heavy machinery and similarly dangerous objects. In addition, the claimant must avoid concentrated exposure to extreme cold/heat. Further, mentally, the claimant is limited to understanding, remembering, and applying simple instructions; maintaining concentration, persistence or pace for simple, repetitive tasks; adapting to routine workplace changes; and having occasional non-collaborative interactions with coworkers and supervisors, but no interactions with the public as a requirement of job duties.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1961] and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2016, through the date of this decision (20 CFR 404.1520(g)).

AR 27-43. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 43.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by failing to provide "any evidence" to support the residual functional capacity assigned. ECF No. 15 at 6. Within the argument, plaintiff asserts that the ALJ erred because he "essentially gave no weight to the medical opinions in the record in assessing Plaintiff's mental residual functional capacity finding." Id. at 7. Plaintiff argues the error was harmful, and that the case should be remanded to the Commissioner for further proceedings. Id. at 13-14. Upon consideration of the ALJ opinion and the record, the court finds the RFC to be adequately supported.

An RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In determining the RFC, the ALJ weighs medical and other source opinions. See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" in medical reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical

evidence."). When evaluating the ALJ's findings and conclusions in formulating the RFC, the court considers whether the ALJ's determination is supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). In sum, the ALJ's determinations must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.

A. The ALJ's RFC Finding Adequately Considered the Medical Evidence

Plaintiff exclusively asserts error based on the ALJ's findings regarding his mental limitations. With respect to mental limitations, the RFC reads as follows:

> Further, mentally, the claimant is limited to understanding, remembering, and applying simple instructions; maintaining concentration, persistence or pace for simple, repetitive tasks; adapting to routine workplace changes; and having occasional non-collaborative interactions with coworkers and supervisors, but no interactions with the public as a requirement of job duties.

AR 32.

a. Summary of the Relevant Medical Evidence

i. Dr. Davis and Dr. Meeknashi

On August 8, 2017, Preston Davis, Psy.D., a State agency psychological consultant, reviewed the medical record and found that plaintiff's mental impairments caused no more than mild limitations, and, therefore, were not severe. AR 92-93. On November 7, 2017, V. Meenakshi, M.D., a State agency psychiatric consultant, reviewed the updated medical record and found that plaintiff's mental impairments caused no more than mild limitations, and, therefore, were not severe. AR 107-09. The ALJ found these opinions not to be persuasive. The ALJ found that although the medical record reflected mostly unremarkable findings and minimal conservative treatment, plaintiff's "anxiousness and tremor of the voice" on certain examinations constituted "abnormalities that are sufficient to show that the de minimus threshold for severe mental impairments is met." AR 38.

////

### ii. Dr. Arguelles

On June 6, 2017, Robert Arguellas, Ph.D., wrote a letter stating that plaintiff had moderate limitations in carrying out complex job tasks; dealing with the public; dealing with supervisors; and interacting with coworkers. AR 518. In addition, Dr. Arguelles opined that plaintiff would need to be able to work four hour workdays, possibly for only the first two months on the job. Id. Six months later, Dr. Arguellas endorsed an opinion signed by Phillip MacFarland, Ph.D. (addressed further below), stating that plaintiff had various moderate to marked limitations, would experience episodes of deterioration or decompensation at the workplace, was incapable of handling any stress, and would miss more than three workdays a month. AR 522-26.

The ALJ found Dr. Arguellas's medical opinions not persuasive because "though he found only moderate limitations in the first medical opinion, be indicated that the claimant would have inability to sustain a full workday. Further, in the second medical opinion, he found even greater marked limitations with associated restrictions" but he did "not provide well reasoned support for these highly restrictive medical opinions." AR 39. The ALJ specified that the positive clinical findings outlined in the medical opinions did not match the mental status findings actually contained in the record, which were limited to notations that plaintiff was "intermittently anxious mood with mild voice tremor [but overall] well preserved/intact mental status findings that are not supportive or consistent with the greater degree of limitation he suggests." Id. The ALJ concluded that Dr. Arguellas's assigned limitations were not "representative of overall functioning as seen in overall well retained/stable mental status findings, lack of  psychiatric exacerbations requiring emergency room visits/hospitalizations/emergency medical transports, lack of medically witnessed panic attacks, overall unremarkable consultative psychological examination results, normal disability field office interview observations, and admission of benefit at consultative examination." Id. The ALJ also discounted the opinions because they were inconstant with one another without any explanation for the inconsistencies. Id.

////

////

### iii. Dr. MacFarland

Medical treatment notes from Dr. Mira Roganovic, M.D. from June 2016 reflect a self-report that plaintiff had started to see a psychologist for anxiety/panic type symptoms due to emotional stress/work issues; the claimant reported that he had been recommended to start anti-anxiety medications for anxiety. AR 358-62. On exam, he was "alert slightly anxious in no acute distress." AR 359. Thereafter, he had regular telephone appointments every two weeks with Dr. Philip MacFarland, Ph.D., and plaintiff reported staying out on work disability for an extended period. AR 420. On October 3, 2017, plaintiff presented to an unknown provider – likely Dr. MacFarland, though it is not clear from the record – for an assessment called the "Millon Clinical Multiaxial Inventory III" (MCMI-III). AR 782.[4] The "Capsule Summary" of the report notes that the MCMI-III "cannot be considered definitive" and should be evaluated in conjunction with clinical data. AR 783. The provider also noted that plaintiff's response style "may indicate a tendency to magnify illness," and, as a result, the scale scores "may be somewhat exaggerated, and the interpretations should be read with this in mind." AR 783. The report lists various scaled scores. AR 785-86. The provider again emphasized that plaintiff tended to exaggerate "the level of experienced illness," and that the scale scores may be exaggerated. AR 787.

On June 13, 2019, Dr. MacFarland issued a medical opinion concluding that plaintiff had marked limitations in maintaining attention and concentration, enduring the daily stress of an 8-hour workday, performing complex tasks, and interacting with the public and co-workers. AR 800. Dr. MacFarland further opined that plaintiff had moderate limitations in performing simple tasks and carryout instructions from supervisors. Id. To support his opinion, Dr. MacFarland attached the October 2017 MCMI-III scale scores, and stated that the scale scores for mild depression, major depression, anxiety, paranoia, and schizophrenia were "clinically significant."

////

---

[4] The ALJ incorrectly refers to this report as having been completed by "Theodore Million" (AR 36) but this is merely the name of the assessment, which does not indicate the administrator on its face. AR782-94. Plaintiff asserts that it was conducted by Dr. MacFarland because it is included in the record in the same exhibit as a note from Dr. MacFarland, though the note itself is illegible and is dated 12/7/17 (AR 781), while the date of the assessment is listed as 10/3/2017 (AR 782).

AR 801-02.  Dr. MacFarland did not further elaborate as to what that meant or how the "clinically significant" scores translated into marked limitations.  Id.

The ALJ found Dr. MacFarland's medical opinion "overall not persuasive" because "[h]e does not provide well reasoned support for the medical opinions; in particular, though he includes an inventory and scales profile, he does not cite to specific evidence as the reason for the degree of limitations given."  AR 40.  The ALJ found that the extreme limitations assessed by Dr. MacFarland were "far too limiting too be consistent with the overall benign mental status findings discussed above, including well preserved psychological constative examination findings despite only minimal conservative treatment."  Id.  The ALJ further noted that the limitations were not consistent with the "absence of repeat emergency room visits or emergency medical transports for panic attacks or other psychiatric exacerbations."  Id.

        iv.   Dr. Lacy

On July 17, 2017, Deborah L. Lacy, Psy.D., conducted a consultative psychological examination of plaintiff.  AR 464.  Plaintiff endorsed anxiety and depression, as well as past alcohol and substance abuse, but stated that he was currently sober.  Id.  He stated that his daily activities included watching television, using the computer, caring for his daughter, self-care activities, light household chores, and preparing simple meals.  AR 468.  Plaintiff reported good relationships with his daughter, mother, and brother, but a strained relationship with his wife.  Id.  Upon examination, plaintiff appeared friendly, appropriate, and cooperative.  Id.  Plaintiff exhibited unremarkable thought processes, speech, thought content, and intellectual functioning.  AR 469.  Plaintiff exhibited intact immediate and remote memory, but mildly impaired recent memory.  Id.  He demonstrated adequate calculation, concentration, abstract thinking, insight, and judgment.  AR 470.

Dr. Lacy concluded that overall symptoms were moderate.  Limitations were assessed as follows: plaintiff was moderately impaired in his ability to maintain regular attendance and perform work activities constantly, complete a workday or workweek without interruptions, deal with work stressors, and interact with coworkers and the public; plaintiff was mildly impaired in his ability to perform detailed and complex tasks; and plaintiff was not impaired in his ability to

perform simple and repetitive tasks, to perform work activities without special or additional supervision, and in his ability to manage funds independently. AR 472.

The ALJ found Dr. Lacy's medical opinion only "somewhat persuasive," reasoning that the "opinion appears to suggest up to moderate limitations in the first, second, and fourth functional areas, which is supported and consistent with the record, as explained in detail above in the paragraph B criteria due to some small abnormalities on consultative examination, some anxiousness in the treatment notes, and some allegations of symptoms. However, Dr. Lacy's medical opinion does not precisely align with the specific functional limitations that are supported and consistent with the record[.]" AR 40. By way of specific example, the ALJ explained that the "opinion does not address whether there is limitation in concentrating, persisting, or maintaining pace. The absence of an identified limitation in this broad area of functioning is not supported or consistent with the anxiousness seen at consultative examination and in the treatment notes, which would suggest moderate limitations in this area over a full workday rather than a brief consultative examination." Id. The ALJ concluded "the record does not support and is not consistent with including a separate absence limitation" because the record is devoid of mental-health related emergency treatment and instead reflects only minimal conservative treatment. Id. The ALJ noted that the RFC accommodates plaintiff's work stressors "through reduction to simple/unskilled work, no required public interactions, otherwise reduced interactions with others, and only routine workplace changes." Id.

    b. <u>Principals Guiding Incorporation of Medical Evidence into an RFC</u>

Because plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations. For applications filed on or after March 27, 2017, the new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources. 20 C.F.R. § 404.1520c(a) (2017). They also eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. 82 Fed. Reg. at 5853. The new regulations require an ALJ to explain how he or she considered the factors of supportability and consistency, which are the two most important factors

in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The new regulations are not clarifications of prior regulations, but instead reflect important changes from the prior regulatory scheme (including prior case law developed under old schemes).

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). Though the ALJ "need not discuss all evidence presented," the ALJ "must explain why significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal citation and emphasis omitted). "Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." Sahyoun v. Saul, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020).

  c. <u>The ALJ Adequately Considered the Medical Evidence in Formulating the RFC</u>

Plaintiff's assertion that the "RFC had no basis in Dr. Lacy's conclusions, or any other doctors conclusions, indicating the ALJ just made them up" is not borne out by the ALJ's extensive analysis of each medical opinion and accompanying reasoning tied to the medical record. ECF No. 15 at 10. Plaintiff urges a finding of error because "the ALJ admits to reviewing the treatment notes and translating them into functional limitations on his own" – citing Seventh Circuit caselaw holding that the ALJ cannot "play doctor" and make independent medical findings – but plaintiff misunderstands the ALJ's obligations here. While the ALJ may not formulate diagnoses from raw medical information (e.g. test results), it is in fact the ALJ's job to review the medical record and translate the record into the RFC. Rounds, 807 F.3d at 1006. This is what the ALJ did: review the medical record and translate it into functional limitations to formulate an RFC. Plaintiff's argument is conclusory and rests on the notion that the ALJ's interpretation of the medical record was "sheer chaos and confusion." This characterization is unwarranted; plaintiff does not identify and explain any specific points of error. ECF No. 15 at 9. A plain reading of the ALJ's opinion reflects that the ALJ adequately considered the medical evidence and explained his rationale for the weight given to each source. The court finds no error.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16), is GRANTED;

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: March 2, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE